UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

| | | |
|---|---|---|
| JOSHUA LEVI ALGER, SR.,<br># 376096, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 1:15-cv-631 |
| | ) | |
| v. | ) | Honorable Robert Holmes Bell |
| | ) | |
| MUSKEGON COUNTY | ) | |
| SHERIFF'S DEPARTMENT, et al., | ) | **REPORT AND RECOMMENDATION** |
| | ) | |
| Defendants. | ) | |
| | ) | |

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983.

Plaintiff is an inmate at the G. Robert Cotton Correctional Facility (JCF).  (ECF No.

76).  On June 15, 2015, plaintiff filed this lawsuit regarding the conditions of

confinement at the Muskegon County Jail between March 1, 2012, and June 18, 2013.

The defendants are the Muskegon County Sheriff's Department, Sheriff Dean Roseler,

Captain (Unknown) Poulin, Lieutenant Marc Burns, Sergeant Todd Gilcrest, Sergeant

Christopher Griswold, Sergeant (Unknown) Smith, Deputy Stephen Benedict, a John

Doe physician, Nurse David Lopez, and a Jane Doe nurse.[1]

Plaintiff alleges that all defendants were deliberately indifferent to his serious

psychological and medical needs and were deliberately indifferent to the risk that he

would be assaulted by violent detainees.  (Compl. at 5, ECF No. 1, PageID.5).  Further,

---

[1] Plaintiff's claims against all other defendants were dismissed on December 4,
2015.  (ECF No. 38).

plaintiff alleges that after he told Sheriff Roseler that he was planning to commit suicide, Roseler had him placed in shackles, and immediately thereafter, plaintiff tried to commit suicide. Plaintiff also alleges that Sheriff Roseler had him placed back in his cell without clearance by mental health staff, allowed plaintiff to be kept in restraints for up to 30 days, and was somehow "involved" in taking plaintiff's medication away without approval from mental health officials. (*Id.*).

Sergeant Gilcrest allegedly left plaintiff "hog tied" in restraints for three days. (*Id.*). Plaintiff alleges that Captain Poulin "denied him access to the courts, deni[ed] access to religious meetings," refused to respond to "several grievances and kites," refused to place plaintiff in the jail's general population, and allowed plaintiff to remain in restraints for 7 to 30 days, and had plaintiff harassed because plaintiff abused women. (*Id.*). Sergeant Griswold allegedly allowed plaintiff to remain in restraints for 7 to 10 days, made plaintiff sleep in cuffs after he attempted suicide, placed him in a dirty holding cell that housed mentally ill, sick, drunk, and dangerous people, was somehow "responsible" for mishandling of incoming and outgoing mail, and allowed only infrequent showers. (*Id.* at PageID.7). Sergeant Smith allegedly "conspired with other jail officials to deny [plaintiff] access to a law library, and access to attend religious services." (*Id.*). Deputy Benedict allegedly sprayed plaintiff with mace "for nothing"; he purportedly threatened plaintiff with punishment if he did not plead guilty to domestic violence charges; he allegedly harassed plaintiff; and he denied him recreation, law library access, and access to medications. (*Id.* at PageID.5).

Plaintiff alleges that John Doe physician saw him on only one occasion, failed

to see plaintiff after he attempted to hang himself, forged documents indicating that plaintiff had been seen more frequently, and improperly discontinued medications. (*Id.* at PageID.8). Nurse Lopez allegedly ignored plaintiff's kites, refused to treat plaintiff, stopped his medications, and failed to provide bandages or adequate treatment for infections. (*Id.*). Nurse Jane Doe allegedly failed to answer plaintiff's kites and grievances, humiliated plaintiff "by asking questions in front of other inmates [and] refused to test [plaintiff] for STDs." (*Id.*).

Plaintiff complains that the jail had a terrible bug infestation and "mold infestation," paint chips were somehow falling off the walls into his food, and showers were too hot and infrequent. The jail allegedly lacked the capacity to keep plaintiff from being harmed or harming himself. Plaintiff alleges that he was deprived of a mattress and was restrained when he "was in a holding cell on suicide watch[,] all [as] punishment for having Bipolar Schizophrenia and severe anxiety and depression, ADHD and social disorder." Plaintiff states that he "pled guilty of charges [he] was not guilty of just to leave the jail." (*Id.* at PageID.9). Plaintiff seeks an award of damages. (*Id.* at PageID.10).

The matter is now before the Court on defendants' motions for summary judgment. (ECF No. 57, 59, 61, 63). Plaintiff did not file a response to defendants' motions. For the reasons set forth herein, I recommend that defendants' motions be granted and that judgment be entered in defendants' favor on all plaintiff's claims.

## Summary Judgment Standard

Summary judgment is appropriate when the record reveals that there are no genuine issues as to any material fact in dispute and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c); *Griffin v. Hardrick*, 604 F.3d 949, 953 (6th Cir. 2010). The standard for determining whether summary judgment is appropriate is "whether 'the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Moses v. Providence Hosp. Med. Centers, Inc.*, 561 F.3d 573, 578 (6th Cir. 2009) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)). The court must consider all pleadings, depositions, affidavits, and admissions on file, and draw all justifiable inferences in favor of the party opposing the motion. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Pluck v. BP Oil Pipeline Co.*, 640 F.3d 671, 676 (6th Cir. 2011).

When the party without the burden of proof seeks summary judgment, that party bears the initial burden of pointing out to the district court an absence of evidence to support the nonmoving party's case, but need not support its motion with affidavits or other materials "negating" the opponent's claim. *See Morris v. Oldham County Fiscal Court*, 201 F.3d 784, 787 (6th Cir. 2000); *see also Minadeo v. ICI Paints*, 398 F.3d 751, 761 (6th Cir. 2005). Once the movant shows that "there is an absence of evidence to support the nonmoving party's case," the nonmoving party has the burden of coming forward with evidence raising a triable issue of fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

To sustain this burden, the nonmoving party may not rest on the mere allegations of his pleadings.  FED. R. CIV. P. 56(e); *see Everson v. Leis*, 556 F.3d 484, 496 (6th Cir. 2009).  The motion for summary judgment forces the nonmoving party to present evidence sufficient to create a genuine issue of fact for trial.  *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1478 (6th Cir. 1990); *see Newell Rubbermaid, Inc. v. Raymond Corp.*, 676 F.3d 521, 533 (6th Cir. 2012).  "A mere scintilla of evidence is insufficient; 'there must be evidence on which a jury could reasonably find for the [non-movant].'"  *Dominguez v. Correctional Med. Servs.*, 555  F.3d 543, 549 (6th Cir. 2009) (quoting *Anderson*, 477 U.S. at 252); *see LaQuinta Corp. v. Heartland Properties LLC*, 603 F.3d 327, 335 (6th Cir. 2010).

## **Proposed Findings of Fact**

The following facts are beyond genuine issue.[2]  Plaintiff was held in the Muskegon County Jail from approximately March 1, 2012, through June 18, 2013.  He was a maximum security inmate.  (Plf. Dep. at 83, ECF No. 62-14, PageID. 335).  Plaintiff was charged with assault less than murder and he expected that he would have to serve time in prison related to the charge.  (ECF No. 60-4, PageID.221-22).

---

[2]Plaintiff's complaint is not verified under penalty of perjury.  It cannot be considered as an affidavit in opposition to defendants' motions for summary judgment.  *See El Bey v. Roop*, 530 F.3d 407, 414 (6th Cir. 2008); *Williams v. Browman*, 981 F.2d 901, 905 (6th Cir. 1992).

Defendants' briefs contain purported block quotes from plaintiff's deposition.  (*see* ECF No. 60 at 2-3, PageID.184-85; ECF No. 62 at 9, PageID.284).  Defendants neglected to include as exhibits the pages where these quotes appear.  Accordingly, the purported quotes have been ignored.  Unsupported statements in  briefs are not evidence.  *See Duha v. Agrium, Inc.*, 448 F.3d 867, 879 (6th Cir. 2006).

During his confinement at the Muskegon County Jail, plaintiff was involved in repeated instances of incorrigible behavior such as throwing feces, urine, water, and cups, spitting on other inmates and guards, yelling, fighting with other inmates, and climbing the bars. He was found in possession of contraband on multiple occasions. In addition, on several occasions, plaintiff demonstrated an ability to slip out of his restraints.[3] (ECF No. 62-2, PageID.292-95; ECF No. 62-3, PageID.297-300; ECF No. 62-4, PageID.302-05; ECF No. 62-5, PageID.307-08; ECF No. 62-6, PageID.310-11; ECF 62-7, PageID.313-14; ECF No. 62-8, PageID.316; ECF No. 62-9, PageID.318-19; ECF No. 62-10, PageID.321-22; ECF No. 62-11, PageID.324-25).

Plaintiff states that he had suicidal tendencies. (Plf. Dep. at 117, PageID.354). He received a mental health evaluation shortly after his arrival at the Muskegon County Jail, and he continued to receive mental health care throughout his confinement. (ECF No. 60-4, PageID.207-22). During his intake examination he advised a psychologist that he was not suicidal. The psychologist offered a diagnosis of an antisocial personality disorder, alcohol abuse, and bipolar disorder, NOS (*Id.* at

---

[3]Plaintiff did not object to any of the exhibits defendants offered in support of their motion for summary judgment. *See* Fed. R. Civ. P. 56(c)(2). Any objections to the Court's consideration of these materials are deemed waived. *See Moore v. Holbrook*, 2 F.3d 697, 699 (6th Cir. 1993); *see also Hope v. Hewlett-Packard Co.*, Civ. No. 14-11497, 2016 WL 827381, at * 2 (E.D. Mich. Mar. 3, 2016) (collecting cases); *Sanders v. Armstrong*, No. 09-cv-36, 2011 WL 589910, at * 2 (E.D. Ky. Feb. 10, 2011); *accord Mealing v. Georgia Dep't of Juvenile Justice*, 564 F. App'x 421, 425 n.7 (11th Cir. 2014). Consideration of defendants' exhibits will not result in a gross miscarriage of justice. *See Wiley v. United States*, 20 F.3d 222, 225-26 (6th Cir. 1994); *Moore v. Holbrook*, 2 F.3d at 699.

PageID.222), and that diagnosis remained unchanged (*Id.* at PageID.207).  During his fifteen months at the jail, plaintiff made two suicide attempts or gestures.  (Plf. Dep. at 143, PageID.356).  One of these incidents occurred on June 12, 2012 , when plaintiff attempted to hang himself using a piece of a sheet.  (ECF No. 60-1, PageID.196; ECF No. 60-2, PageID.198-200; ECF No. 68-2, PageID.316; ECF No. 64-2, PageID.351).

The second incident occurred on or about April 19, 2013, when plaintiff used a contraband razor to make a  number of cuts to the palm side of his right wrist.  (ECF No. 62-9, PageID.318).  His trial was scheduled to begin on April 23, 2013.  (ECF No, 60-4, PageID.211).

Plaintiff was treated with antibiotics for a MRSA infection during his confinement.  (Plf. Dep. at 68, 77, ECF No. 64-1, PageID.350, 353).  Plaintiff testified that Nurse Lopez provided treatment for skin infections, migraines, and seizures.  (Plf. Dep. at 71-72, ECF 64-1, PageID.351).  Plaintiff also received other treatment provided by nurses.  (Plf. Dep. at 120, ECF No. 64-1, PageID. 354).  He received bandages for scrapes on his wrists.  (Plf. Dep. at 139-41, PageID.355-56).  On or about October 31, 2012, a physician terminated plaintiff's medications other than an antibiotic because plaintiff had been caught "cheeking"[4] his medication.  (ECF No. 60-3, PageID.203; ECF No. 62-12, PageID.328).

---

[4]"Cheeking" is a term used to describe an inmate's action of concealing and pretending to swallow medication.  *See McCray v. Gauderer*, No. 1:13-cv-873, 2015 WL 163582, at * 5 n.1 (W.D. Mich. Jan. 13, 2015); *Meador v. Growse*, No. 12-cv-120, 2014 WL 970105, at * 2 (E.D. Ky. Mar. 14, 2014).

Plaintiff was involved in an incident on the afternoon of February 14, 2013, where he refused Deputy Benedict's order to get down off the cell bars and to stop throwing cups at Benedict. Benedict responded with a single burst of pepper spray. Plaintiff testified during his deposition that he did not believe that he was a threat to Benedict because plaintiff "was behind some cages." (Plf. Dep. at 95, PageID.58-1, PageID.177; 58-2, PageID.179-80).

On May 22, 2013, plaintiff entered his *nolo contendere* plea, and when the court accepted the plea, his status changed from a pretrial detainee to a convicted inmate awaiting sentencing. Plaintiff was sentenced on June 10, 2013. On June 18, 2013, he was transferred into the custody of the Michigan Department of Corrections. On June 15, 2015, plaintiff filed this lawsuit.[5]

## Discussion

### I.     Psychological and Medical Care

---

[5]Plaintiff filed his complaint while his appeal of his plea based convictions were pending in state court. The decision of the Michigan Court of Appeals reveals that plaintiff did not plead guilty. He "pleaded nolo contendere to charges of assault with intent to do great bodily harm less murder, MCL 750.84, and aggravated domestic assault, second offense, MCL 750.81a(3). His plea hinged on his understanding that he was a third habitual offender and would be sentenced as such. The trial court determined at sentencing that [plaintiff] was a fourth habitual offender based on a Colorado conviction, the status of which [plaintiff] vociferously protested. Despite that [plaintiff] had previously expressed that he would not plead guilty if treated as a fourth habitual offender, the court refused to allow [plaintiff] to withdraw his plea and imposed an enhanced sentence." *People v. Alger*, No. 322473, 2016 WL 3364988, at *1 (Mich. Ct. App. June 16, 2016). The Court of Appeals held that the trial court had abused its discretion in denying plaintiff's motion to withdraw his *nolo contendere* plea because he had been misinformed by the trial court of the direct consequences of his plea. *Id.* at 6-7.

-8-

Plaintiff believes that the psychological and medical care that he received at the jail was deficient.  In *Estelle v. Gamble*, 429 U.S. 97 (1976), the Supreme Court held that deliberate indifference to a prisoner's serious medical needs, manifested by prison staff's intentional interference with treatment or intentional denial or delay of access to medical care, amounts to the unnecessary and wanton infliction of pain proscribed by the Eighth Amendment.[6] *Estelle*, 429 U.S. at 104-05.  In judging the sufficiency of "deliberate indifference" claims, the court must view the surrounding circumstances, including the extent of the injury, the realistic possibilities of treatment, and the possible consequences to the prisoner of failing to provide immediate medical attention. *Westlake v. Lucas*, 537 F.2d 857, 860 n. 4 (6th Cir. 1976).

In *Wilson v. Seiter*, 501 U.S. 294 (1991), the Supreme Court clarified the deliberate indifference standard.  Under *Wilson*, a prisoner claiming cruel and unusual punishment must establish both that the deprivation was sufficiently serious to rise to constitutional levels (an objective component) and that the state official acted with a sufficiently culpable state of mind (a subjective component).  501 U.S. at 298.  The Supreme Court held in *Farmer v. Brennan*, 511 U.S. 825 (1994), that deliberate

---

[6]As a pretrial detainee, plaintiff's constitutional rights were secured through the Fourteenth Amendment's Due Process Clause rather than directly from the Eighth Amendment's prohibition against cruel and unusual punishment.  Through the Fourteenth Amendment, pretrial detainees are entitled to the same Eighth Amendment protections as convicted prisoners. *See Ford v. County of Grand Traverse*, 535 F.3d 483, 495 (6th Cir. 2008); *Miller v. Calhoun County*, 408 F.3d 803, 812 (6th Cir. 2005).  The Eighth Amendment's Cruel and Unusual Punishments Clause applies to the States through the Fourteenth Amendment's Due Process Clause. *See Wilson v. Seiter*, 501 U.S. 294, 296-97 (1991).  There is no need for a separate analysis under the Fourteenth Amendment.

-9-

indifference is tantamount to a finding of criminal recklessness. A prison official cannot be found liable for denying an inmate humane conditions of confinement "unless the official knows of and disregards an excessive risk to inmate health or safety." 511 U.S. at 837.

The Sixth Circuit's decision in *Miller v. Calhoun County*, 408 F.3d 803 (6th Cir. 2005), summarized the subjective component's requirements:

> The subjective component, by contrast, requires a showing that the prison official possessed a sufficiently culpable state of mind in denying medical care. Deliberate indifference requires a degree of culpability greater than mere negligence, but less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result. The prison official's state of mind must evince deliberateness tantamount to intent to punish. Knowledge of the asserted serious needs or of circumstances clearly indicating the existence of such needs, is essential to a finding of deliberate indifference. Thus, an official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment.

*Miller*, 408 F.3d at 813 (citations and quotations omitted). Where a prisoner has received some psychological and medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second-guess medical judgments and constitutionalize claims which sound in state tort law. *See Alspaugh v. McConnell*, 643 F.3d 162, 169 (6th Cir. 2011); *Westlake*, 537 F.2d 860 n. 5; *see also Reed v. Speck*, 508 F. App'x 415, 419 (6th Cir. 2012) ("The subjective component is intended 'to prevent the constitutionalization of medical malpractice claims.'") (quoting *Dominguez v. Corr. Med. Servs.*, 555 F.3d 543, 550 (6th Cir. 2009)).

-10-

Plaintiff has not presented evidence sufficient to support the subjective component of an Eighth Amendment claim against any defendant. There is no evidence of any deficiency in plaintiff's psychological or medical care. Plaintiff's disagreement with the treatment provided falls far short of supporting an Eighth Amendment claim. *See e.g., Kosloski v. Dunlap*, 347 F. App'x 177, 180 (6th Cir. 2009); *Hix v. Tennessee Dep't of Corr.*, 196 F. App'x 350, 357 (6th Cir. 2006).

I find that all defendants are entitled to judgment in their favor as a matter of law on these claims.

## II.    Use of Restraints, Force, Risk of Assault, and Cell Conditions

The Eighth Amendment requires that prisoners be provided with the "minimal civilized measure of life's necessities." *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). The function of a federal court in a conditions of confinement case is not how best to operate a jail or prison facility, nor to decide what is most desirable to the inmates.[7] *Walker v. Mintzes*, 771 F.2d 920, 927 (6th Cir. 1985). "The Constitution does not mandate comfortable prisons." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). Moreover, "[n]ot every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey v Wilson*, 832 F.2d 950, 954 (6th Cir. 1987). Plaintiff has not presented evidence in support of his allegations regarding cell conditions. He has

---

[7]Plaintiff was not entitled to be housed in the cell or at the security classification of his choice. *See Olim v. Wakinekona*, 461 U.S. 238, 245 (1983); *Rimmer-Bey v. Brown*, 62 F.3d 789, 790-91 (6th Cir. 1995); *see also Mackey v. Dyke*, 111 F.3d 460, 463 (6th Cir. 1997).

not presented evidence on which a reasonable trier of fact could find that any defendant deprived him of the minimal civilized measure of life's necessities.

In order to establish an excessive use of force, plaintiff must satisfy both the objective and subjective tests under the Eighth Amendment. *See Farmer v. Brennan*, 511 U.S. at 834; *Wilson v. Seiter*, 501 U.S. at 297-300. Whenever jail officials stand accused of using excessive physical force in violation of the Cruel and Unusual Punishments Clause, "the core judicial inquiry is that set out in *Whitley [v. Albers*, 475 U.S. 312, 320-21 (1986) ]: whether the force was applied in a good-faith effort to restore discipline, or maliciously or sadistically to cause harm." *Hudson v. McMillian*, 503 U.S. 1, 7 (1992).

In determining whether the use of force is wanton and unnecessary, the court should evaluate the need for the application of force, the relationship between that need and the amount of force used, the threat reasonably perceived by the responsible officials, efforts made to temper the severity of a forceful response and the absence of any serious injury. *Hudson,* 503 U.S. at 7. Maximum-security prisoners are not usually the most gentle and tractable of men. *Williams v. Browman*, 981 F.2d 901, 905 (6th Cir. 1992). Plaintiff was a mentally ill maximum security prisoner with a history of incorrigible behavior, including suicide attempts. It is against this backdrop that the defendants' use of force in the form of physical restraints and a single discharge of pepper spray must be evaluated.

Plaintiff has not marshaled any evidence in support of his claims.  He has not shown that the use of restraints by any defendant was wanton and unnecessary.[8]  His subjective belief that he did not pose any real threat to defendant Benedict because he "was behind some cages," is not enough to survive Benedict's motion for summary judgment.  Plaintiff was required to come forward with evidence sufficient to create a genuine issue of material fact for trial.  On the present record, no reasonable trier of fact could find that any defendants' actions were "wanton,"malicious and sadistic and for the very purpose of causing harm.  *See Wilson v. Seiter*, 501 U.S. at 302; *Whitley*, 475 U.S. at 320-21; *see also Kennedy v. Doyle*, 37 F. App'x 755 (6th Cir. 2002).

Plaintiff's claims that defendants were deliberately indifferent to the risk of assault fare no better.   " 'To be cruel and unusual punishment, conduct that does not purport to be punishment at all must involve more than ordinary lack of due care for the prisoner's interests or safety.' " *Woods v. LeCureux*, 110 F.3d 1215, 1222 (6th Cir. 1997) (quoting *Whitley v. Albers*, 475 U.S. at 319).  Plaintiff has not presented evidence on which a reasonable trier of fact could find in his favor on the objective or subjective

---

[8]If defendants had not ordered that plaintiff be restrained during the period after his suicide attempts, defendants would have risked having that conduct classified in hindsight as deliberate indifference, particularly if plaintiff had been successful in taking his own life.  *See Schultz v. Stillman*, 148 F. App'x 396, 401 (6th Cir. 2005) ("Because suicide is a difficult event to predict, this Court inquires 'whether the decedent showed a strong likelihood that he would attempt to take his own life in such a manner that failure to take adequate precautions amounted to deliberate indifference to the decedent's medical needs.' ") (quoting *Gray v. City of Detroit*, 399 F.3d 612, 616 (6th Cir. 2005)).  In *Stillman*, a Sixth Circuit panel found that a corrections officer could be deliberately indifferent in failure to take adequate suicide prevention measures even in the absence of evidence directly showing that the deceased inmate's pre-suicide behavior was "self-injurious." 148 F. App'x at 402.

components of such claims.  He has not presented evidence demonstrating that he was "incarcerated under conditions posing a substantial risk of serious harm." *Farmer*, 511 U.S. at 834; *Woods*, 110 F.3d at 1223.

Further, a jail official "cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows and disregards and excessive risk to inmate health or safety; the official must be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer,* 511 U.S. at 837.  "This burden is not light; even 'an official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot ... be condemned as punishment.' " *Shade v. City of Middletown*, 200 F. App'x 566, 569 (6th Cir. 2006) (quoting *Farmer*, 511 U.S. at 838); *see Perez v. Oakland County*, 466 F.3d 416, 424 (6th Cir. 2006).  Accordingly, I find that defendants are entitled to judgment in their favor was a matter of law on these claims.  On the present record, no reasonable trier of fact could find in plaintiff's favor on the objective of subjective component of an Eighth Amendment deliberate indifference of risk of assault claim against any defendant.

## III.   First Amendment, Conspiracy, and Other Claims

Plaintiff did not allege facts sufficient to state a First Amendment claim for access to court, free exercise of religion, or conspiracy, *see Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), much less present evidence in support of his claims sufficient to

survive defendants' motions for summary judgment. *See Lewis v. Casey*, 518 U.S. 343, 354 (1996); *O'Lone v. Estate of Shabazz*, 482 U.S. 34 2, 345 (1987); *Robertson v. Lucas*, 753 F.3d 606, 622 (6th Cir. 2014); *Gutierrez v. Lynch*, 826 F.2d 1534, 1538 (6th Cir. 1987).   Plaintiff's claim that nurse violated his right of privacy likewise lacks supporting evidence sufficient to survive defendants' motions. *See Lyle v. Montgomery County Jail,* No. 3:15-cv-1065, 2015 WL 6108069, at * 3 (M.D. Tenn. Oct. 14, 2015). Verbal harassment or abusive language by a jail or prison official does not amount to a constitutional violation. *See Wingo v. Tenn. Dep't of Corr.*, 499 F. App'x 453, 455 (6th Cir. 2012); *see also Churn v. Parkkila*, No. 2:11-cv-166, 2014 WL 710930, at * 2 (W.D. Mich. Feb. 24, 2014); *Johnson v. Wood*, No. 1:12-cv-1329, 2013 WL 373578, at * 3 (W.D. Mich. Jan. 30, 2013).   Plaintiff's complains that he did not receive responses to his grievances and kites are not claims of constitutional dimension. *See LaFlame v. Montgomery County Sheriff's Dep't*, 3 F. App'x 346, 348 (6th Cir. 2001); *see also Peterson v. Ostrander*, 1:16-cv-104, 2016 WL 3751681, at * 2-3 (W.D. Mich. July 14, 2016); *Cage v. Harry*, No. 1:09-cv-512, 2010 WL 4683970, at * 9 n.4 (W.D. Mich. Sept. 30, 2010) (collecting cases).

## IV.    Qualified Immunity

Alternatively, the individual defendants seek judgment in their favor on the basis of qualified immunity. (ECF No. 58, PageID.172-74; ECF No.60, PageID.192-94; ECF No. 62, PageID.286-88; ECF No 64, PageID.345). "A government official sued under section 1983 is entitled to qualified immunity unless the official violated a statutory or constitutional right that was clearly established at the time of the challenged conduct." *Carroll v. Carman*, 135 S. Ct. 348, 350 (2014); *see Lane v. Franks*, 134 S. Ct. 2369, 2381 (2014). The first prong of qualified immunity analysis is whether the plaintiff has alleged facts showing that each defendant's conduct violated a constitutional or statutory right. *See Saucier v. Katz*, 533 U.S. 194, 201 (2001).

A qualified immunity defense can be asserted at various stages of the litigation, including the summary judgment stage. *See English v. Dyke*, 23 F.3d 1086, 1089 (6th Cir. 1994). The qualified immunity inquiry at the summary judgment stage is distinguished from the Rule 12(b)(6) stage in that generalized notice pleading no longer suffices, and the broader summary judgment record provides the framework within which the actions of each individual defendant must be evaluated. *See Thompson v. City of Lebanon*, No. 14-5711, __ F.3d __, 2016 WL 4011166, at * 2 (6th Cir. July 26, 2016); *Riverdale Mills Corp. v. Pimpare*, 392 F.3d 55, 62 (1st Cir. 2004). At the summary judgment stage, a plaintiff may not rely on his pleadings. Rather, the issue is whether "the plaintiff has offered sufficient evidence to indicate that what the official did was objectively unreasonable in light of the clearly established constitutional

-16-

rights." *Champion v. Outlook Nashville, Inc.*, 380 F.3d 893, 905 (6th Cir. 2004); *see Merriweather v. Zamora*, 569 F.3d 307, 315 (6th Cir. 2009).

The second prong is whether the right was "clearly established" at the time of the defendant's alleged misconduct.  *Id.*  Trial courts are permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first.  *See Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

All plaintiff's claims fall short of satisfying the first prong because he has not presented evidence in support of the claims that he asserted in his complaint.  He falls short of satisfying the second prong of the qualified immunity analysis as well because he made no attempt to carry his burden of demonstrating how each defendant's conduct violated his clearly established constitutional rights.

In *Brosseau v. Haugen*, 543 U.S. 194 (2004), the Supreme Court examined the underlying purpose of the requirement that the law be clearly established:

> Qualified immunity shields an officer from suit when she makes a decision that, even if constitutionally deficient, misapprehends the law governing the circumstances she confronted. ... Because the focus is on whether the officer had fair notice that her conduct was unlawful, reasonableness is judged against the backdrop of the law at the time of the conduct.  If the law at the time did not clearly establish that the officer's conduct would violate the Constitution, the officer should not be subject to liability or, indeed, even the burdens of litigation.

543 U.S. at 198.  Qualified immunity is an immunity from suit rather than a mere defense to liability.  *Plumhoff v. Rickard*, 134 S. Ct. 2012, 2019 (2014).  The Supreme Court and the Sixth Circuit have emphasized that the second inquiry "'must be undertaken in light of the specific context of the case, not as a broad general

-17-

proposition.'" *Brosseau v. Haugen*, 543 U.S. at 198 (quoting *Saucier*, 533 U.S. at 201); *see City & County of San Francisco v. Sheehan*, 135 S. Ct. 1765, 1777-76 (2015) (We have repeatedly told courts . . . not to define clearly established law at a high level of generality." (quoting *Ashcroft v. al-Kid*, 563 U.S. 731, 742 (2011)). "'[T]he right the official is alleged to have violated must have been 'clearly established' in a more particularized, and hence more relevant sense.'" *Lyons v. City of Xenia*, 417 F.3d 565, 572 (6th Cir. 2005) (quoting *Brosseau*, 543 U.S. at 198-99); *see Perez v. Oakland County*, 466 F.3d 416, 428 (6th Cir. 2006) ("Because most legal rights are clearly established at some level of generality, immunity would be impossible to obtain if a plaintiff were required only to cite an abstract legal principle that an official had 'clearly violated.'"). "The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987).

In *Plumhoff v. Rickard*, the Supreme Court reiterated clearly established law is determined in the light of the particular circumstances faced by the individual defendant at the time he or she acted, not on the basis of a high level of generality:

> [A] defendant cannot be said to have violated a clearly established right unless the right's contours were sufficiently definite that any reasonable official in the defendant's shoes would have understood that he was violating it. In other words, existing precedent must have placed the statutory or constitutional question confronted by the official beyond debate. In addition, we have repeatedly told courts not to define clearly established law at a high level of generality, since doing so avoids the crucial question whether the official acted reasonably in the particular circumstances that he or she faced.

134 S. Ct. at 2023 (citations and quotations omitted).  In *Lane v. Franks*, another 2014

decision, the Supreme Court again emphasized that in order to be clearly established,

the question must be "beyond debate" at the time the defendant acted.  134 S. Ct. 2383;

*see also City & County of San Francisco v. Sheehan*, 135 S. Ct. at 1774; *Pearson*, 555

U.S. at 245 (If judges are in disagreement on an issue at the time the defendant acted,

it is "unfair" to later subject the defendant to monetary damages "for picking the losing

side of the controversy.").

A third qualified immunity decision from the Supreme Court in 2014, *Carroll*

*v. Carman*, summarized the broad scope of the protection provided by qualified

immunity in these terms:

> A government official sued under § 1983 is entitled to qualified
> immunity unless the official violated a statutory or constitutional right
> that was clearly established at the time of the challenged conduct.  A
> right is clearly established only if its contours are sufficiently clear that
> a reasonable official would understand that what he is doing violates
> that right.  In other words, existing precedent must have placed the
> statutory or constitutional question beyond debate.  This doctrine gives
> government officials breathing room to make reasonable but mistaken
> judgments, and protects all but the plainly incompetent or those who
> knowingly violate the law.

135 S. Ct. at 350 (citations and quotations omitted); *Humphrey v. Mabry*, 482 F.3d 840,

847 (6th Cir. 2007) ("Qualified immunity leaves government authorities 'ample room

for mistaken judgments.' ") (quoting *Scott v. Clay County*, 205 F.3d 867, 873 n. 9 (6th

Cir. 2000)).

"The burden of convincing a court that the law was clearly established 'rests

squarely with the plaintiff.'"  *Key v. Grayson*, 179 F.3d 996, 1000 (6th Cir. 1999)

(quoting *Cope v. Heltsley*, 128 F.3d 452, 459 (6th Cir. 1997)); *see Shreve v. Franklin County, Ohio*, 743 F.3d 126, 134 (6th Cir. 2014); *T. S. v. Doe*, 742 F.3d 632, 635 (6th Cir. 2014). Plaintiff did not meet his burden by ignoring it. Accordingly, I find that the individual defendants are entitled to judgment in their favor as a matter of law on the alternative basis of qualified immunity.

## V.    Muskegon County

The Muskegon County Sheriff's Department is not a legal entity capable of being sued for purposes of § 1983. *See Lee v. Kalamazoo County Jail*, No. 1:15-cv-379, 2015 WL 2365965, at * 2 (W.D. Mich. May 18, 2015); *Hudson v. Eaton County Jail*, No. 1:13-cv-987, 2014 WL 24137, at * 2 (W.D. Mich. Jan. 2, 2014). I assume that plaintiff intended to sue Muskegon County. Muskegon County may not be held vicariously liable for the actions of its employees under § 1983. *See Connick v. Thompson*, 563 U.S. 51, 60 (2011); *City of Canton v. Harris*, 489 U.S. 378, 392 (1989); *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978). Instead, a county is liable only when its official policy or custom causes the injury. *Id.* Plaintiff has not presented evidence sufficient to support a municipal liability claim against Muskegon County. Absent an underlying constitutional violation, plaintiff's claims against the municipal defendant fail as well. *See Robertson v. Lucas*, 753 F.3d 606, 622 (6th Cir. 2014) ("There can be no liability under *Monell* without an underlying constitutional violation."). Accordingly, I find that Muskegon County, named in this complaint as the Muskegon County Sheriff's Department, is entitled to judgment in its favor as a matter of law.

## Recommended Disposition

For the foregoing reasons, I recommend that defendants' motions for summary judgment (ECF No. 57. 59, 61, 63) be granted, and that judgment be entered in defendants' favor on all plaintiff's claims.

Dated:  August 3, 2016                          /s/  Phillip J. Green
                                                United States Magistrate Judge

## NOTICE TO PARTIES

Any objections to this Report and Recommendation must be filed and served within fourteen days of service of this notice on you.  28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b).  All objections and responses to objections are governed by W.D. MICH. LCIVR 72.3(b).  Failure to file timely and specific objections may constitute a waiver of any further right of appeal.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *Keeling v. Warden, Lebanon Corr. Inst.*, 673 F.3d 452, 458 (6th Cir. 2012); *United States v. Branch*, 537 F.3d 582, 587 (6th Cir. 2008).  General objections do not suffice.  *See McClanahan v. Comm'r of Social Security*, 474 F.3d 830, 837 (6th Cir. 2006); *Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596-97 (6th Cir. 2006).